Honorable Lisa Brown State Senator, 3rd District P.O. Box 40482 Olympia, WA 98504-0482
Dear Senator Brown:
By letter previously acknowledged, you have requested our opinion on the following paraphrased questions:
 When an air pollution control authority is comprised of a single county, is the board member representing the largest city in the county required to be an elected official or employee of the city?
 When an air pollution control authority is comprised of a single county, is the city selection committee required to appoint, as the member representing the largest city in the county, the designee of that city's council and mayor?
 BRIEF ANSWERS
We answer both of your questions in the negative. The controlling statute, RCW 70.94.100, does not provide that holding an elective office, or being employed by the city, is a necessary qualification for service on the board of an air pollution control authority, as a city's representative. Additionally, the statute does not require the city selection committee to honor the preference of the mayor and council of the largest city in the county as to who should represent that city on the board.
 BACKGROUND
You requested our opinion as to the questions set forth above as the result of a recent appointment to the Spokane County Air Pollution Control Authority Board (SCAPCA). As you explain in your letter and accompanying materials, for some time it has been local practice that the city selection committee would select, as the representative of the City of Spokane, the individual preferred by the Spokane city council and mayor. The individual designated would usually, if not always, be an elected member of the city council.
With regard to the particular appointment in question, the city council and mayor expressed a preference that the city selection committee appoint a specific city council member to serve as Spokane's representative on SCAPCA. The council member designated was, in fact, already serving on SCAPCA pursuant to a previous appointment, and had been selected by the SCAPCA board to serve as chair during the following year. The city selection committee, however, declined to appoint the designee of the council and mayor for an additional term. It instead voted to appoint a former Spokane city council member, who resides in Spokane but does not currently hold elective office, effective with the beginning of the new term.
The governing body of an air pollution control authority consists of members appointed by various local government bodies. In the case of an authority comprised of a single county, state law provides that:
 [T]he board shall be comprised of two appointees of the city selection committee, at least one of whom shall represent the city having the most population in the county, and two representatives to be designated by the board of county commissioners.
RCW 70.94.100(2). The statute also provides that the four members so appointed will themselves appoint a fifth member, so that the board will contain an odd number of members. RCW 70.94.100(3). Board members serve terms of four years. RCW 70.94.100(4).
The city selection committee consists of the mayors of each incorporated city and town within the county. RCW 70.94.110. The statutory scheme for appointment of members therefore provides that the mayors of each city and town within the county shall appoint two members, at least one of whom must represent the largest city. RCW 70.94.100(2); RCW 70.94.110.
 DISCUSSION
With this background in mind, we turn to your specific questions. Your first question, repeated for ease of reference, inquired:
 When an air pollution control authority is comprised of a single county, is the board member representing the largest city in the county required to be an elected official or employee of the city?
The statute does not expressly provide that election to another office, or city employment, is a necessary qualification for membership on the board of an air pollution control authority. It seems reasonable to conclude that if the Legislature had intended that only officers or employees of a city be qualified for board membership, it would have said so directly. The Legislature has, in fact, done so in at least one other context. See RCW 35.58.120
(describing the membership of a metropolitan municipal corporation council).
The legislative history of RCW 70.94.100 suggests that the word "represent" was not intended to imply that the representative must necessarily be a city officer. The Legislature first added the word "represent" to the statute in 1967, as part of an amendment that structured the statute in something similar to its current form. Laws of 1967, ch. 238, § 21. Following that amendment, the statute described the board's membership as "two appointees of the city selection committee . . . at least one of whom shall represent the city having the most population in the county, and two county commissioners to be designated by the board of county commissioners." Id.
After the 1967 amendment, therefore, the statute described the appointees of the city selection committee differently than the appointees of the county commissioners. It provided that at least one member appointed by the city selection committee must "represent" the largest city, but described the commissioners' appointees as actually being elected county commissioners. Id. When the Legislature uses different language within the same statute to describe similar subjects, it must be presumed that it intended a different result. Cazzanigi v. General Electric Credit Corp., 132 Wn.2d 433, 446, 938 P.2d 819 (1997). It therefore appears that when the Legislature provided for the appointment of a city representative, it did not necessarily intend that the representative must be an elected official, since it described those positions differently than it did the designees of the county commissioners.
Later developments underscore this conclusion. The Legislature amended RCW 70.94.100 again in 1989. Laws of 1989, ch. 150, § 1. That act consisted of a single section, the sole effect of which was to rephrase the passages involving county commissioners. The Legislature replaced each reference to a member actually being a county commissioner with authorization for the commissioners to appoint a "representative" to the board. Id. The accompanying legislative bill report explained that the Legislature made this change in response to an informal opinion of this office in which we advised that a board of county commissioners was limited to choosing from among its members for the board, and could not designate a non-commissioner as a permanent alternate. Final Bill Report, SB 5887 (1989).[1]
Since that amendment, the statute has referred to both the appointees of the city selection committee and of the county commissioners as "representatives." Since it is clear that the Legislature intended the word "representatives," when used to describe the commissioners' appointees, to permit the appointment of individuals who are not elected county commissioners, it is reasonable to conclude that the Legislature also intended that the word "represent," when used to describe the representative of the largest city, might be a person who is not an elected official of the city. It is presumed that when the Legislature uses the same language to describe similar terms, that it intends the same meaning to apply to both. In re Hopkins, 89 Wn. App. 198, 201,948 P.2d 394 (1997).
For these reasons, we conclude that the city selection committee is not required to appoint an elected official or city employee as the representative of the largest city in the county. We therefore answer your first question in the negative.
Your second question, repeated for ease of reference, inquired:
 When an air pollution control authority is comprised of a single county, is the city selection committee required to appoint, as the member representing the largest city in the county, the designee of that city's council and mayor?
We also answer your second question in the negative. The statute vests the authority to appoint city representatives on the board in the city selection committee. As to an authority comprised of a single county, it makes no reference to the governments of the individual cities, except to the extent that their mayors serve on the selection committee. RCW 70.94.100; RCW 70.94.110.
The only limitation that the statute places upon the committee's discretion is that one member must "represent" the largest city. In the case of an authority comprising a single county, the statute does not refer to the mayor and council of the largest city as having any role in the appointment of board members. The statute does, however, vest appointing power for multiple county authorities in the mayor and council. In the case of an authority comprising from two to five counties, "the board shall be comprised of one appointee from each county, who shall represent the city having the most population in such county, to bedesignated by the mayor and city council of such city, and one representative from each county to be designated by the board of county commissioners. . . ." RCW 70.94.100(2) (emphasis added). In the case of an authority comprising six or more counties, "the board shall be comprised of one representative from each county to be designated by the board of county commissioners of each county . . . and three appointees, one each from the three largest cities within the local authority's jurisdiction to be appointed by themayor and city council of such city." Id. (Emphasis added.)[2]
The Legislature has therefore phrased the statute differently depending upon the number of counties comprising the authority. The appointment of members by a city selection committee, composed of all the mayors of incorporated cities and towns, is used only for authorities comprising a single county. In all other cases, the council and mayor of each city entitled to representation selects the board member to represent their city. Id.
This difference in drafting must be presumed to reflect a legislative intent to reach different results. Cazzanigi,132 Wn.2d at 446. Since the Legislature expressly provided for appointments by councils and mayors for multi-county authorities, it must have intended that the appointments in single-county authorities be determined differently. The Legislature certainly could have provided that the preference of the council and mayor of the largest city finally determine the appointment, if this had been its intent. Instead the Legislature vested that authority in a different body, the city selection committee.
The statute suggests no reason to conclude that the real discretion as to whom to appoint belongs to a different body than the one the Legislature designated by statute. While we recognize that this determination leads to the awkward result that someone other than the city selects the city's representative, our review of the statute and its legislative history compels this conclusion. We must therefore answer your second question in the negative.
We hope that this opinion will be of assistance.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JEFFREY T. EVEN Assistant Attorney General
[1] The informal opinion the bill report referenced was a letter from Senior Assistant Attorney General James K. Pharris to the Honorable C.C. Bridgewater, who at that time served as Cowlitz County Prosecuting Attorney, dated August 19, 1988. The committee file on the bill, found in the State Archives, includes a copy of that letter, demonstrating that it was among the materials before the Legislature at the time of the 1989 amendment.
[2] This difference between the appointing power regarding authorities comprising a single county, or comprising multiple counties, results from a 1991 amendment to RCW 70.94.100. Laws of 1991, ch. 199, § 704. By that act, the Legislature eliminated the role of city selection committees regarding multi-county authorities, vesting the authority to appoint city representatives with the mayors and councils of the respective cities. It left untouched, however, the language regarding the representative of the largest city in a single-county authority. Id.