IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | No. 40908-2-III |
| | ) | UNPUBLISHED OPINION |
| STEVEN M. SWINFORD, | ) ) | |
| Petitioner. | ) | |

LAWRENCE-BERREY, J. — Steven Swinford, a prisoner, seeks relief from personal restraint. He argues his restraint is unlawful because the Washington State Department of Corrections (DOC) punished him under WAC 137-25-030(633) (633 violation) instead of WAC 137-25-030(663) (663 violation) for forcefully shoving another inmate. The former provision is more serious than the latter.

As explained below, what distinguishes between the two violations is that the more serious violation involves a fight or a physical attack. Here, the hearing officer found that Swinford's forceful shove of another inmate was consistent with a fight or physical attack. We conclude that Swinford's more severe punishment was proper, and we deny his petition.

FACTS

Correctional Officer (CO) Anthony Cullum saw Steven Swinford shove Samuel Piatnitsky, another inmate, which caused Piatnitsky to trip over a chair and fall back. Piatnitsky then struck Swinford in the back of the head with an open hand.

CO Cullum instructed them to separate, and they complied. Both were placed in mechanical wrist restraints and CO Cullum escorted Piatnitsky to medical for assessment. Piatnitsky did not suffer any injuries.

CO Cullum filed a serious infraction report charging Swinford with a 633 violation.[1] Along with his report, CO Cullum submitted a video recording of the altercation, photos of Piatnitsky taken at medical, and a supplemental incident report

---

[1] WAC 137-25-030 lists several types of prisoner violations but does not describe the elements or provide examples of what constitutes the violations. The prisoner handbook describes the elements and provides examples. In relevant part, the prisoner handbook describes a 633 violation as:

Assaulting another offender (Category B, Level 1 - 15 Points)
ELEMENTS:
    The offender physically attacked another offender, and
    The offender did not require medical care beyond assessment.
EXAMPLES:
    The offender struck another offender with his fist while leaving mainline. The other offender was evaluated by Health Services, but no treatment was required.
    The offender threw an apple core at another offender, striking the offender in the face. Medical attention was not sought.
Pet'r's Br., Ex. 3.

2

written by CO Casey Coile. CO Coile's report noted that he saw Swinford and Piatnitsky take a "fighting/defensive stance." DOC's Resp. Br., Ex. 1, Attach. B.

DOC notified Swinford of the charge and the scheduled disciplinary hearing date. Swinford requested additional witness statements from Lieutenant Paul McDermott, Investigator Maria Angel, and Piatnitsky. Lieutenant McDermott's statement largely echoed CO Cullum's incident report. Investigator Angel's statement explained she did not witness the incident. In his written statement, Piatnitsky wrote that imposing a 633 infraction on Swinford was excessive, said that Swinford was "a usually very friendly person," and claimed he and Swinford were just "horseplaying." DOC's Resp. Br., Ex. 1, Attach. C.

At the infraction hearing, the hearing officer read aloud CO Cullum's incident report and asked Swinford if he wanted to respond. Swinford responded that he and Piatnitsky "were having a debate about pushing and shoving" and he told Piatnitsky he could push him over. DOC's Resp. Br., Ex. 2 at 3. Swinford told the hearing officer that he decided to show Piatnitsky. Swinford admitted to the hearing officer that he shoved Piatnitsky but claimed he was not trying to fight. Swinford told the hearing officer that a

663 violation[2] would be more appropriate than a 633 violation.

In the disciplinary hearing minutes and findings, the hearing officer summarized

what the video showed, and thus his findings:

> Video show[s] [Swinford] get up from a chair and quickly move toward another inmate and shove him.  Video show[s] the [other] inmate falling backward over other chairs almost falling to the floor but catches his balance.  Video shows both inmates square off when the other inmate strikes Swinford with an open hand.  Video show[s] staff intervene to stop the incident.

DOC's Resp. Br., Ex. 1, Attach I.

---

[2] The prisoner handbook describes a 663 violation as:
Using physical force, intimidation, or coercion against any person
(Category C, Level 1 - 5 Points)
ELEMENTS:
    The offender has used a veiled threat, body language, words or actions to intimidate or coerce another person.
    The offender uses physical force (not a fight or assault) against another person.
    Intimidation — "apprehension of harm" or "fear of one's safety" (in other words, you're scared).
EXAMPLES:
    An offender grabs another offender by the arm (physical force) and pushes him away.
    An offender steps up to, or stands above staff in effort to intimidate.
    An angry offender steps up to staff, making a statement in a raised voice that "he will be out of prison one day and they will meet," (intimidation).  A direct threat of bodily harm is not made.
Pet'r's Br., Ex. 4.

Based on the evidence, the hearing officer determined there was sufficient evidence to support the more serious 633 violation. The officer determined that the appropriate sanction was 30 days' cell confinement, 15 days' loss of good conduct time, and 2 years' loss of weightlifting privileges.

Swinford administratively appealed his infraction to the prison's superintendent and argued that his actions did not meet the definition of a 633 violation. The superintendent reviewed the evidence and determined that the hearing officer's findings accurately described the video recording, and he affirmed the sanctions.

Swinford timely filed this personal restraint petition (PRP), challenging the disciplinary decision.

ANALYSIS

Swinford's primary arguments are that he committed the less serious 663 violation, not a 633 violation; but if he committed both, we should apply the rule of lenity and conclude that he committed only the lesser violation.[3] Because we conclude

---

[3] The rule of lenity is a rule of statutory construction that requires a court to construe an ambiguous statute in favor of a defendant. *State v. Cyr*, 195 Wn.2d 492, 505, 461 P.3d 360 (2020). It is a rule of last resort, employed only after all other rules of statutory construction fail to discern legislative intent. *State v. Richter*, 24 Wn. App. 2d 920, 929, 521 P.3d 303 (2022).

Swinford's quick approach and forceful shove of Piatnitsky was not a lesser 663 violation but was a serious 633 violation, we do not address his lenity argument.

"'Rules of statutory construction apply to administrative rules and regulations.'" *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 51-52, 239 P.3d 1095 (2010) (quoting *City of Seattle v. Allison*, 148 Wn.2d 75, 81, 59 P.3d 85 (2002)). In interpreting a statute, and therefore a regulation, we first look to its plain language. *See State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (applying this rule to a statute rather than a regulation). If its meaning is clear on its face, we apply that plain meaning as an expression of intent. *See State v. Hirschfelder*, 170 Wn.2d 536, 543, 242 P.3d 876 (2010) (applying this rule of construction to a statute rather than a regulation). Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the regulation in which that provision is found, related provisions, and the regulatory scheme as a whole. *See id.*

The lesser 663 violation can occur by use of force, intimidation, or coercion. Pet'r's Br., Ex. 4. When force is used, such as here, a 663 violation occurs when "[t]he offender uses physical force (not a fight or assault) against another person." Pet'r's Br., Ex. 4. Under the plain meaning rule, the phrase, "not a fight or assault," signifies that fights and assaults are not a 663 violation.

6

WAC 137-25-020(2)[4] defines "assault" as "[a] physical attack upon the body of another person. The attack may be made with any instrument including, but not limited to, weapons, body parts, food products, or bodily secretions." Chapter 137-25 WAC does not define "attack." When a term is undefined, we often turn to a dictionary definition. *See State v. A.M.R.*, 147 Wn.2d 91, 94, 51 P.3d 790 (2002) (applying this rule to a statute rather than a regulation). "Attack" is defined as "the act of falling on with force or violence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 140 (1993).

The question then is whether Swinford's shove of Piatnitsky comes within this definition of a physical attack. If it does, it is not a 663 violation.

Here, Swinford quickly got up from his chair to approach Piatnitsky and shoved him with sufficient force that Piatnitsky almost fell. By definition, the greater 633 violation occurs when "[t]he offender physically attack[s] another offender, and [t]he other offender d[oes] not require medical care beyond assessment." Pet'r's Br., Ex. 3. This is precisely what occurred here. Swinford quickly approached Piatnitsky and pushed him with enough force that he nearly fell, and Piatnitsky did not require medical

---

[4] We use the definition in this code chapter because the various violations are also set forth in this chapter.

care.  Because we conclude that Swinford committed only the more serious offense, we do not apply the rule of lenity.[5]

Swinford makes two secondary arguments.  His first is that the DOC is equitably estopped from asserting a 633 violation against him.  He argues that the DOC provided the handbook to him and that he reasonably relied on DOC's examples in the handbook of what distinguishes a 663 violation from a 633 violation.  Specifically, one example describes a 633 violation as striking with a fist, while another example describes a 663 violation as pushing someone away.  Pet'r's Br., Ex. 3; Ex. 4.

A party who asserts equitable estoppel must prove that (1) the opposing party made a statement or acted inconsistently with a later claim, (2) the party reasonably relied on that statement or act, and (3) the party would be harmed if the opposing party were allowed to contradict or repudiate the statement or act.  *Dep't of Ecology v. Theodoratus*, 135 Wn.2d 582, 599, 957 P.2d 1241 (1998).  Equitable estoppel against the government is generally disfavored.  *Id*.  Therefore, when asserted against the government, equitable

---

[5]  Had Swinford merely pushed Piatnitsky, this would not be an attack.  The fact that Piatnitsky almost fell and the two then assumed a fighting posture allows us to positively determine that only the 633 violation occurred.  In situations where the hearing officer is unable to positively determine if the push or shove is an attack, the officer should conclude that only the lesser 663 violation has been proved.

estoppel must be necessary to prevent a manifest injustice and must not impair government functions. *Id*. "Each element must be proved by clear, cogent, and convincing evidence." *Id*.

Swinford fails to establish the first element of equitable estoppel. Swinford did not push Piatnitsky away. Instead, he quickly approached Piatnitsky and forcefully shoved him hard enough to cause him almost to fall. As noted above, Swinford's actions constituted an assault. Although some shoves might qualify as either a 633 violation or a 663 violation, Swinford's quick approach and forceful shove of Piatnitsky does not qualify as the lesser violation. We conclude that Swinford did not reasonably rely on the examples given by the DOC that distinguish a 633 violation from a 663 violation.

Swinford next argues that the DOC, through its hearing officer, violated his right to due process by not considering Piatnitsky's written statement. We disagree that the hearing officer failed to consider all the evidence. First, there is nothing to suggest that the hearing officer excluded Piatnitsky's statement. Second, the hearing officer stated he had considered "the reports from staff and *the evidence submitted* to include video evidence." DOC's Resp. Br., Ex. 1, Attach. I (emphasis added). We infer that "the evidence submitted" includes Piatnitsky's written statement. Third, Piatnitsky's description of the incident as "horseplay" was refuted by the video recording. We see no

error in the hearing officer's reliance on the recording in its findings; the officer was not required to describe what other people claimed happened when the video evidence itself showed what happened.

We deny Swinford's PRP.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____              _____
Staab, C.J.                                         Cooney, J.